STATE and DOROTHY LINE, Appellants, v. PINELLAS-MANATEE JOINT BRIDGE AUTHORITY, etc., Appellees.

200 So. 689

En Banc

Opinion Filed February 25, 1941

*Chester B. McMullen, Clyde H. Wilson, Allen C. Grazier* and *Bussey, Mann & Barton,* for Appellants;

*John C. Blocker* and *G. B. Knowles,* for Appellees;

*Alfred P. Marshall, Keen & Allen, John W. Cone* and *Henry C. Tillman,* as *Amicus Curiae.*

WHITFIELD, J.—This appeal was taken by the State and a taxpayer intervenor from a final decree rendered under Section 5106 (3296) C. G. L., validating $450,000.00 of "Pinellas-Manatee Joint Bridge Authority Ferry Revenue bonds" proposed to be issued under Chapter 19957, Special Laws of 1939, "for the purpose of providing funds for paying the cost of acquiring, improving and extending the ferry" "across the waters of Tampa Bay from Pinellas Point in Pinellas County, Florida, to Piney Point in Manatee County, Florida."

The main contentions here are that Chapter 19957, Special laws of 1939, "as applied to the subject matter

of this suit," violates Sections 16, 20, and 21 of Article III, and amended Section 6, Article IX, of the Florida Constitution.

The title of Chapter 19957, Special Laws of 1939, is as follows:

"AN ACT Creating a Joint Bridge Authority of Pinellas and Manatee Counties by and through Their Boards of County Commissioners Thereof and Authorizing Same to Construct, Acquire, Improve, Extend, Operate and Maintain Certain Public Works, Undertakings, and Projects Under, In, Over, Above and Across the Waters of Tampa Bay and Along the Shore Lines Thereof from a Point in Pinellas County to a Point in Manatee County: Defining Such Public Works; Prescribing the Mode of Procedure for and Regulating the Issuance and Sale of Bonds and Other Obligations to Finance Such Works, Undertakings and Projects, Providing for the Payment of Such Bonds and Other Obligations; and Authorizing Agreements with the Holders of Such Bonds and Other Obligations."

The Act contains the following provisions:

"Section 1. Pinellas and Manatee Counties, Florida, by and through the personnel constituting the members of the respective Boards of County Commissioners thereof and their successors in office be and they are hereby created a joint authority which said authority be, and the same is hereby authorized to construct, acquire, improve, extend, operate and maintain certain public works, undertakings and projects hereinafter defined, from a point in Pinellas County to a point in Manatee County, under, in, over, above and across the waters of Tampa Bay, and along the shore line thereof. . . .

"Section 2. POWERS.—Every county embraced within this Act shall have power and is hereby authorized separately and in conjunction with, or jointly with another

county that has the same or a similar community of interest in any public works, undertakings, or projects authorized herein and said 'joint authority' or 'authority' is hereby fully and completely empowered and authorized: . . .

"(d)   To contract debts for the construction of any public works project, to borrow money, and to issue its bonds to finance such construction, and to provide for the rights of the holders of the bonds and to secure the bonds all as hereinafter provided. . . .

"Section 14.   That no 'public works' or 'project' herein authorized shall be acquired or constructed in direct competition with an existing facility in an area actually served by said facility now being owned or operated by private enterprise unless said existing facility shall first be acquired by purchase, arbitration, or the exercise of the right of eminent domain, or unless the consent of the owner or owners of such private enterprise owning or operating such existing facility be first obtained.   The acquisition or construction by the authority of a bridge, tunnel, or ferry from a point in Pinellas to a point in Manatee Counties and *vice versa,* shall be construed to be direct competition to the present Bee Line Ferry now operating between said Counties. . . .

"Section 20.   That whenever any project is constructed hereunder and becomes free of debt, it shall thereafter be operated free of toll or other charges to the public in using, same and also shall then and there become the property of the State Road Department of the State of Florida.   It is further provided, that nothing herein contained shall prohibit the authority or joint authority from obtaining private funds for the financing of any project authorized herein. That Section 14 shall be particularly applicable to the Bee-Line Ferry which is now being operated over or about

the location upon which the proposed projects herein authorized are to be constructed."

The Constitution of Florida contains the following provisions:

"The Legislature shall not pass special or local laws . . . for the establishment of ferries." Sec. 20, Art. III.

"In all cases enumerated in the preceding section, all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the Legislature may pass special or local laws, except as now or hereafter otherwise provided in the Constitution: Provided that no local or special bill shall be passed, nor shall any local or special law establishing or abolishing municipalities, or providing for their government, jurisdiction and powers, or altering or amending the same, be passed, unless notice of intention to apply therefor shall have been published in the manner provided by law at least thirty days prior to introduction into the Legislature of any such bill. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed, and such evidence shall be filed or preserved with the bill in the office of the Secretary of State in such manner as the Legislature shall provide, and the fact that such notice was established in the Legislature shall in every case be recited upon the journals of the Senate and of the House of Representatives: Provided, however, no publication of any such law shall be required hereunder when such law contains a provision to the effect that the same shall not become operative or effective until ratified or approved at a referendum selection to be called and held in the territory affected in accordance with a provision therefor contained in such bill, or provided by general law. (Amended, Senate Joint Resolution No. 81, Acts 1937; adopted at general election, November 8, 1938.)"

The bill of complaint herein alleges "that the Pinellas-Manatee Joint Bridge Authority is a duly and legally constituted public instrumentality of the State of Florida, existing under and by virtue of Chapter 19957, Laws of Florida, Special Acts of 1939." The title to Chapter 19957 expresses the subject of the Act as being an Act "creating a Joint Bridge Authority," but the body of the Act "creates a Joint Authority." There is nothing in the Act specifically authorizing the creation of the "Pinellas-Manatee Joint Bridge Authority" as a "public instrumentality of the State of Florida." The Act authorizes the acquisition and maintenance of ferries from a point in Pinellas County to a point in Manatee County over and across Hillsborough Bay, a part of which bay is in Hillsborough County; but the Act does not identify the termini of the authorized ferries, though it does expressly authorize the "joint authority" mentioned in the Act to acquire and extend, improve and operate, "the Bee Line Ferry which is now being operated over or about the location upon which the proposed projects herein authorized are to be constructed."

Chapter 19957 is not a general law but a special or local law; and even if the enactment in this case which authorizes the County Commissioners of Pinellas and Manatee Counties to jointly "construct, acquire, improve, extend, operate and maintain" ferries, etc., is not such an integral part of authority for "the establishment of ferries," as to make the quoted enactment a violation of Section 20, Article III, of the Constitution which forbids the Legislature to "pass special or local laws . . . for the establishment of ferries," such quoted enactment clearly violates the provisions of amended Section 21 of Article III, which require a stated publication of notice of proposed special or local laws "where the matter or thing affected may be situated" before they are introduced for enactment, in that the *locus in quo*

"where the matter or thing affected" is "situated" is in Pinellas, Hillsborough and Manatee Counties, and the publication of the notice of intention to apply for such legislation was made only in Pinellas and Manatee Counties. The words, "where the matter or thing affected may be situated," necessarily mean that the stated publication of notice of proposed local or special laws shall be made in each and every county whose area or the exercise of whose jurisdiction is affected by the operation of such enactment.

A portion of the route of the ferry on Hillsborough Bay is in Hillsborough County, and at least *the exercise* of the jurisdiction and authority of Hillsborough County and its officials in and over such portions of the bay in Hillsborough County as are included in the ferry route, must necessarily be affected by the operation of the ferry under Chapter 19957, Acts of 1939.

The enactment is by its title and its provisions confined to territory within Hillsborough, Pinellas and Manatee Counties. It does not relate to State property, or to State functions. It is local in its operation; it is administered by the officials of two named counties; and it does not purport to be enacted for a State purpose, but for a local "joint authority" purpose. The Act does not make a permissible classification of counties or otherwise so as to make it a general law. See Anderson v. B. P. I., 102 Fla. 695, 136 So. 334; State v. Stoutamire, 131 Fla. 698, 179 So. 730.

The procedure in its enactment and the provisions of Chapter 19957, Special Acts of 1939, show a legislative intent to enact a local or special law and not a general law; and as the organic requirement is that notice of the proposed local or special law shall be published in the locality where the matter or thing is situated, and as the subject matter of the enactment is "situated" in three counties and it is stipulated that the required notice was.

published in only two of the three counties, the mandatory requirements of the Constitution as to the publication of notice were not complied with; and, there being no referendum provision in the Act, the enactment is invalid and inoperative to authorize the issue of the bonds validated by the decree appealed from. Therefore, the decree should be reversed.

It is not necessary to discuss other alleged illegal provisions of the Act.

Reversed.

Brown, C. J., Buford, and Adams, J. J., concur.

Terrell, Chapman and Thomas, J. J., dissent.